Gail v. County of Marin has been submitted on the briefs and our first case on the oral argument calendar today is O'Neal v. Price. Good morning and may it please the court. My name is Adam Grace and I represent Louis O'Neal in this appeal. As we've hashed it out between myself and my learned counsel on the other side of the aisle, there are basically four issues in this case. One of them is what is to bring or seek to bring and what difference is there to seek to bring or to bring an action under 28 U.S.C. 1915. The second issue is whether a denial of a right to proceed in form of pauperous is itself a dismissal per se. The third issue is whether a dismissal to state for failure to state a claim is a strike. And the fourth, which was brought up by the Attorney General's offices, is whether this court has a right to hear this appeal anyway. I think all of them are fair arguments. Obviously, as the court can tell from the briefs, I disagree with point four. But I think the real nub of this case that if we could determine on that, we would have to look no further, is that a denial of a right to proceed in form of pauperous is not a dismissal. And since two of the cases relied on by the court below were clearly not dismissed, there were no strikes, and so it was clearly an error to determine that Mr. O'Neal didn't have an ability to go in form of pauperous under the law. Does it depend on what the basis was? If the court said the reason I'm not going to certify you to proceed in form of pauperous is because you have no legitimate claim here, wouldn't that be a sufficient basis from which we could conclude that it is a strike? If it were a dismissal, Your Honor, I would agree with you. However, a denial to proceed in form of pauperous is treated differently under the statutes and in the case law. There are minimal due process rights that go along with dismissals that aren't clear here. The statutory language is completely different. In this Court's own opinions, particularly in the Andrews case, dismissals are treated differently from denials to proceed in form of pauperous. And what cases have actually been struck? If the dismissal, if at the same time that the court dismisses the action, it also denies the application to proceed in form of pauperous, you would agree in that hypothetical it would be a strike. Well, in that case, Your Honor, I believe the court would be looking at the dismissal. And once it's dismissed, I suppose there's no reason for it to proceed in form of pauperous because it's been dismissed. And the fact that the court does both things, as was discussed in the reply brief, shows that all the courts that are considering this issue consider dismissals to be different things from denials to proceed in form of pauperous. Maybe you and I are just quarreling over semantics. But it seems to me that if I look at the fact that the court denied IFP status, and the reason for doing so was because of its determination that there was no cognizable claim for relief, and therefore, that the case is dismissed for that reason as well, that that is the appropriate analysis, isn't it? If there were a dismissal ordered, Your Honor, or a dismissal entered, yes, I would agree with you. Or if 1915g were written differently to say the case were terminated for lack of merit or something like that, then again, I'd agree with you. But the statute clearly states that the case has to be dismissed for those reasons. It uses the word dismissal, the docket sheets, which is all we have, say, case terminated. But why isn't case terminated the functional equivalent of dismissal? Even though they don't use that word, it seems hard to distinguish. Well, Your Honor, I would say that generally you can't dismiss a case that hasn't started yet. And also, a dismissal has some notice and hearing right, notice and ability to be heard rights that aren't clear here. Here we have an ex parte summary procedure, which wouldn't be the case in a dismissal. Also, subjectively, the court's below. That's not necessarily true, is it? I mean, if we have a situation, for example, with a vexatious litigant, where we impose a pre-filing requirement, so that the pre-filing review requirement, so that a judge actually has to look at the proposed complaint and make a determination as to whether or not it's a legitimate claim, if we refuse to entertain the filing of that lawsuit, that is a judicial determination that there is no case that can proceed, isn't it? That is true, Your Honor, and that would be the same case for somebody who incurred three strikes. But that doesn't apply to somebody who hasn't incurred three strikes. And so basically what that would be doing is, it is almost sort of circular to say, well, we're going to consider it a dismissal because we think that you're a vexatious litigant without determining that there was, in fact, a dismissal. And certainly in the Szilagyi case and in the California state prison case, there were no dismissals. I mean, it's clear on the pacer. It's clear on the order. Even on the order on page 70, and I think that was for the CSP case, it's clearly broken out where they say, no, you can't go and form a papyrus. It doesn't say dismissal anywhere. But if they say, yes, you can go and form a papyrus, they give a notice that if you don't fulfill your obligations to pay your partial fees, then the case will be dismissed. So what I – I'm sorry. Okay. The cases that have dealt with the difference between dismissals and in form of papyrus comparing and contrasting, and there have been two, the Billman case and the Gibson case that have been cited in the materials, clearly state, I mean, without any ambiguity, that the two are different things. And so I believe that based upon the clear language of the statute, all of the law interpreting it, including that cited by the Attorney General's office, the materials that are in the record which show the subjective intent of the courts below, that clearly there have not been any dismissals in this case. And therefore, it was not proper to determine that it was a three-striker. What if we can determine from looking at the record that the IFP status was denied because the court looked at the complaint and made a determination that it was frivolous? That the court in this case, Your Honor, or the courts in the past case? Just asking hypothetically. If a court looks at a proposed motion for IFP status and refuses to grant that status because the underlying claim for which IFP status is sought is frivolous, isn't that the equivalent of a determination that the case is dismissed? It might be a determination, and that's certainly the position that the Attorney General's office has taken. However, it isn't a dismissal. A dismissal requires rather more. Even in the rules of court, it's clear that somebody might get an order to show cause why it shouldn't be dismissed because the court believes it's frivolous. But isn't the purpose of 1915 to prevent the filing of non-meritorious lawsuits by people who are abusing the system? I agree, Your Honor. I think that is exactly the purpose of that. And by deeming a refusal to proceed a dismissal, I think it actually goes against that because that would give the prisoner an incentive to try to pursue a meritless appeal just to avoid the dismissal. However, if the court can take a quick look and say, this is going nowhere, and the prisoner leaves it at that, the defendant needs not be inconvenienced. The court need not be inconvenienced further. It still takes judicial time, does it not? It does, but it takes rather more judicial time to defend an active claim where there are answers and motions and things like that. But again, if the congressional purpose is to prevent the courts from being inundated by frivolous claims, why shouldn't we be counting these as strikes? That seems to me to be perfectly coherent with congressional policy. The congressional policy, Your Honor, is mixed. That is one of the congressional policies. The other congressional policy, which I'd say is equally important, is not to freeze out litigants who are the most disempowered people in our society from access to our court system and from access to the community. But we do want to freeze out vexatious and frivolous litigants, do we not? And that's exactly right. And so I think what the Congress has done is they've done a balance. We'll say, we'll take the initial check. If that's all it takes, everybody's good. If it goes to the point where it's actually filed and dismissed for frivolity, then we'll count it because the case has had a rather closer look by that point. We have these out-of-circuit cases that were cited, Woods v. Dahlberg and Dupree v. Palmer, which seem to indicate that denying a motion to proceed in form of apocryphus could be the equivalent of an involuntary dismissal. How do you distinguish those cases? Your Honor, I'm not – I don't recall exactly the facts of those cases. Certainly, I would say that based upon what this Court said in Andrews, the importance of keeping people from being frozen out of court would certainly be an issue because you get a rather closer look on a dismissal than you do. And also, the plain language of the statute is very clear. It requires a dismissal under 1915G. You have about a minute left, Your Honor. Reserve. I'm sorry. Seeing the amount of notes that my learned opponent has, I think I'd better. So, I'll step down. Thank you. Good morning. I'm Megan O'Carroll of the California Attorney General's Office, appearing on behalf of Defendant Price. Of the three cases the District Court relied on as strikes under the three-strikes provision, plaintiff is asking this Court to rule that two of them cannot be counted because they were dismissed pursuant to the Court's screening requirement. Not only does this position violate the plain language of Section 1915G, but if the Court adopts this position and rules that a District Court's screening order can never count as a strike, it will overhaul the way the District Courts currently apply the three-strikes provision. Well, let me give you a hypothetical. Let's say that the District Court denies FP status, okay? And the prisoner elects to proceed with the case anyway, and it's subsequently dismissed as frivolous. Is that two strikes or one strike? Do you mean that the prisoner elects to proceed with it in a paid complaint? Yes. And then it's dismissed as frivolous. Well, I would, in that instance, argue that it ought to be counted as one strike, and the reason is that the substance of the complaint was the same in each one, not looking at it in terms of whether the District Court responded to the complaint once or twice, but that the inmate sought redress for a particular scenario, set of facts before the Court, and the Court determined that the inmate failed to state a claim on those facts. Well, if it's a purely question of statutory interpretation, how does that square with your position? I mean, it seems to me that either dismissal with FP is a strike or denial of FP is counted as a dismissal or not. And I don't see how you can have two strikes in one case. So, and I also don't see how the election of the prisoner to proceed has anything to do with whether it's a strike or not. But isn't that where we are in this case under your theory? Well, interestingly, there are two separate provisions of screening requirements for the District Court, one when the inmate proceeds in form of pauperous, and one in section 1915 large A, when the inmate is not attempting to proceed in form of pauperous. And each of those statutes have the exact same language. And each one of them says that the District Court shall dismiss the complaint when the inmate fails to say the claim. So upon reconsideration and considering what you've said, it would seem that if the inmate attempts... Make two strikes, you're saying. Exactly. So if he gets denied FP status and decides to proceed in the same case and files the same complaint on a paid basis, your argument is that's two strikes. It would have to be, yes, Your Honor. Well, let's go back to my vexatious litigant hypothetical that I was posing to Mr. Grace. If the inmate keeps filing the same claim in court after court, that's a classic example of a strike, is it not? Yes. And I can't recall the case at present, but it does say that bringing repetitive claims constitutes... And it could be the identical claim. That's exactly right. So it wouldn't be incongruent with Judge Thomas's question to count two strikes for the same case if what he's doing is continuing to bring the same frivolous claim multiple times. Right, because... But isn't the difference on that is that if you're bringing the same claim and it's dismissed, that's res judicata as to those claims. In the example of denial of... I'm sorry, of FP, IFP, that would not be res judicata to the filing of a paid complaint asserting the same allegations, right? Yes, that is correct. I can't argue with that. I mean, Denton is pretty clear on that, that... The inmate is entitled to bring it in a paid complaint. However, it's done at the inmate's peril. I mean, he's already been given an opinion from the court that he fails to state a and yet he chooses to bring it again in a paid complaint. There's no reason why his poor choice should not be counted as a second dismissal. Well, they certainly aren't told that now. If the inmates aren't told that in the denial of FP order, that if they bring... If they elect under Denton, and it's their right to bring a paid complaint, that's going to count as an additional strike. Well, but similarly, an inmate wouldn't be told that if he files a complaint that will count as a strike for failure to state a claim. And yet it does, in a sense, if the inmate chooses to use the process of the court and fails to state a claim, regardless of his malice or intent, if he fails to state a claim, that constitutes a strike. And also, the vast majority of all the cases the district courts currently rely on derive from cases that were dismissed sua sponte under the court screening order at present. Because when you consider that if the court has an obligation to screen all inmate cases to determine whether they state a claim, the only times when an inmate's case would be dismissed for failure to state a claim upon a notice motion of defendants and when the case has been formally filed is after the court has already determined that the inmate does state a claim. So it's a very, very rare case when the district court screens the complaint, determines the inmate, states a claim, and then the complaint is formally filed, and then the defendants are served and make a notice motion to dismiss. That's why the vast majority of all cases that are currently used as strikes, in other words, where the court told the inmate that he failed to state a claim, are cases where defendants were never served. And where... Because it doesn't serve the purpose of the act, because the district court screens it, denies FP, and then the prisoners got to elect whether to proceed with the action or not. Yes. And at that point, the judicial resources kick in. So to me, that argues for the other interpretation, that a denial of FP doesn't affect our determination of whether it's an action or not. But there are nearly no cases, very few cases, that would be dismissals by an inmate for failure to state a claim other than those that occur in the context of screening. That's where the vast majority of all inmate cases are dismissed for failure to state a claim. And since Section 1915G clearly directs the courts to look to cases where the inmate failed to state a claim, the vast majority of all those cases will be ones that were reviewed by the court in the context either of 19 Section 15A, large A, or else 1915, that inform apoporus statute. We sure get a lot of appeals from... counseled motions from the state of dismissals for failure to state a claim after it's proceeded to the second stage. And... We get a lot of, a whole lot of appeals. You mean, you're saying that you get many appeals where inmates have brought lawsuits which were screened out by the district court? No, no, where it's, they were allowed to proceed and then there's a subsequent dismissal for failure to state a claim. But in that instance, it is a fairly rare case relative to the vast number where the cases were screened out. Perhaps, but in terms of our volume, it's pretty high. I mean, if you're talking about just raw numbers, I mean, maybe it's a subset of a whole larger array. I don't know. I'm afraid so. It does appear to the vast majority... What's the... I don't understand the point, perhaps. Well, the point is that if section 1915G is not to be totally vitiated, the court must consider cases that were dismissed upon screening because the vast majority of inmate cases that get dismissed are dismissed at the point of screening. It would overhaul the application of section 1915G and the plain meaning and language of that section if court's cases that were dismissed upon the court screening are not to be considered. Right, but if the court is dismissing it for failure to state a claim, that's a different matter from denying FP. But that is exactly what happened in the two cases that plaintiff refers to below, Skellige and California State Prison, Sacramento. In one of them, the district court said that plaintiff was attempting to sue an individual who's immune from suit. In another one, the district court literally said that plaintiff had attempted to bring a lawsuit under a federal constitutional provision where the federal constitutional provision did not provide for such relief. And it clearly said that the plaintiff failed to state a claim. And although each of those orders says the inmate is denied leave to proceed and form a pauperous and it cites section 1915A, I mean, I beg your pardon, just section 1915, section 1915E, I think it is E subsection 2, directs the courts to dismiss complaints under that inform a pauperous section. Right, but if you don't take the step and to actually do the dismissal, isn't that a different circumstance? Well, I wouldn't say that using the word dismissal is necessary when the court cites the provision that says you must dismiss cases under this provision. Well, you know, to get a final judgment, you got to take the final steps. You can't just say, well, it was close and it doesn't count. I mean, if the district court is not terminating the litigation by a dismissal or a judgment, it goes forward if the inmate elects to pursue it. But in each of these two instances, Skellige and California State Prison, Sacramento, the judgment was entered upon the termination of those cases. Well, he elected not to go forward, right? The inmate? No, I don't believe so. My understanding of reviewing the document was that the inmate was out. The case was over. It was terminated. It's different from a dismissal. You have to close the case. Right. On the docket, you got to take some action. Well, I'm taking up too much of your time with questions. I'm sure my colleagues have some. Well, I would just then turn to the final case, which is that of Perriott. And in that case, plaintiff is really able to offer no reasonable basis, either procedural or substantive, as to why it should not count as a strike. The findings and recommendations very specifically state that despite the fact that it was intended, that plaintiff had failed to exhaust his administrative remedies, that it was also dismissed on the merits with prejudice for failure to state a claim. And because of that, plaintiff O'Neill has acquired three strikes. And therefore, this court should affirm the district court's judgment. Make sure that, do either of you have further questions for the state? No. Okay. Thank you. Hello again. In listening to my learned opponent, I don't have much more to say, except I'm sure that this court must get a lot of appeals from attorneys who have filed complaints below that get dismissed for failure to state a claim. I know it is a policy of this court and of this country to take sort of a broad view with prisoners because they don't have the help of lawyers. And a lot of the times, they don't have the best of educations. And so, you know, just one time out of the box, especially if they don't keep bugging the courts over and over and over again, the minute the court tells them no the first time, I think that would be another reason not to exclude them for the courts for essentially doing the right thing. Didn't your client make it on our, what we refer to as our frequent filer list? I mean, he's got quite a history, does he not, with the courts, with the federal courts in California? Well, I'm embarrassed to say that I think he has more litigation experience than I do. But at the same time, you know, the statute says what it says, and the three-strike provision needs to be based on the dismissals. I think you think he's going to get his three strikes soon, regardless of what we do here. I hope that's not an indication of what the court plans today. No, no, no. Thank you very much for your argument. Counsel, thank you, by the way, for taking the appointment. We very much appreciate your service. Case to serve will be submitted.
judges: Thomas, Tallman, Ikuta